UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

R.P. and L.P., on behalf of L.P., a minor child,

                    Plaintiffs,

      - against -

PELHAM UNION FREE SCHOOL DISTRICT

                    Defendant.

------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/29/2017

16-CV-02898
(NSR)(TPG)

**OPINION**

Plaintiffs R.P. and L.P. bring the instant action on behalf of their daughter, L.P., against the Pelham Union Free School District ("District") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 (2012). Plaintiff's case is an appeal from a State Review Officer's ("SRO's") decision dismissing plaintiff's review petition as untimely. *See* ECF No. 1, at 1. Defendant now moves to dismiss this case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and alternatively, moves to dismiss the case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 15, at 1. The court finds that plaintiffs failed to exhaust their administrative remedies, and thus this court lacks subject matter jurisdiction to hear this case. Defendant's motion to dismiss is granted pursuant to Rule 12(b)(1).

1

## BACKGROUND

### I. IDEA Administrative Procedures

This case arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-82 (2012), as well as New York State Education Law. The IDEA requires states to provide disabled children with a free and appropriate education ("FAPE") suitable to their needs, and sets out standards for fulfilling this requirement. 20 U.S.C. § 1412(a)(1). When a student in the state of New York is eligible for special education services, the IDEA requires that a state Committee on Special Education ("CSE") create an individualized education program ("IEP") for that student. 20 U.S.C. § 1414(d)(1)(A)-(B); N.Y. Educ. Law § 4402 (McKinney 2017); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.3 (2017). If a parent feels as though the school district is not accommodating their child, New York state laws and regulations create procedures for filing complaints and initiating due process hearings. 20 U.S.C. §§ 1221e-3, 1415(e)-(g); N.Y. Educ. Law § 4404(1); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i)-(l).

The state of New York has a two-tiered system of review to resolve disputes between parents and school districts, and allows parents to address through this system "any matter relating to the identification, evaluation, or educational placement of a student with a disability . . . or the provision of a free appropriate public education to such student." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i)(1). First, the parties file their complaint with an Impartial Hearing Officer ("IHO"), and the IHO conducts a hearing on the matters in dispute. N.Y. Educ. Law § 4404(1)(a); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i)-(j). A party

2

may then appeal the IHO's decision to a State Review Officer ("SRO"). N.Y. Educ. Law § 4404(2); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k).

Until the end of 2016, New York state regulations required that a petition for review to the SRO be served on the school district within 35 days of issuance of the IHO's decision.[1] N.Y. Comp. Codes R. & Regs. tit. 8, §§ 279.2(b) (2016). If a party receives the IHO decision via mail, the party gets an additional five days—the date of mailing and the four subsequent days—beyond the 35-day requirement. *See id.* In the request for review, the appealing party must "clearly specify the reasons for challenging the impartial hearing officer's decision, identify the findings, conclusions and orders to which exceptions are taken, or the failure or refusal to make a finding, and shall indicate what relief should be granted by the State Review Officer to the petitioner." N.Y. Comp. Codes R. & Regs. tit. 8, § 279.4(a) (2017). The SRO reviews the IHO's decision as well as the record, and makes an independent decision based on the record. *Id.* § 279.12(a).

---

[1] In 2017, the regulation governing the amount of time required to file a petition for review after an IHO decision—N.Y. Comp. Codes R. & Regs. tit. 8, § 279.2(b)—was amended, and since January 1, 2017, a party must serve the District with a petition for review within 25 days from the date of the IHO decision. *Compare* N.Y. Comp. Codes R. & Regs. tit. 8, § 279.2(b) (2017) *with* N.Y. Comp. Codes R. & Regs. tit. 8, § 279.2(b) (2016); *see also* N.Y. State Educ. Dep't, Proposed Amendment of Part 279 of the Regulations of the Commissioner of Education (June 6, 2016), https://www.regents.nysed.gov/common/regents/files/616p12d4.pdf.
Because the events that constitute the basis for this decision, however, all occurred prior to 2016, the court analyzes this claim using the prior version of the regulation, mandating that the party serve the District with the petition within 35 days of the IHO decision.

## II. Facts

L.P. has been eligible for special education services since she was in elementary school, and plaintiffs have consistently met with the CSE to determine L.P.'s schooling needs. ECF No. 16, at 2. In the 2011-2012 school year—L.P.'s ninth-grade year—L.P. was enrolled in the Forman School, a boarding school in Connecticut, but was discharged in February 2012 based on her chronic lateness and inability to follow directions. ECF No. 16, at 2. She then started at Pelham Memorial School and, by recommendation of the CSE, enrolled in the Therapeutic Support Program ("TSP") within the Pelham Memorial School. ECF No. 16, at 2-3. The District developed a Functional Behavioral Assessment and Behavioral Intervention Plan to target certain behaviors including inattention, resistance to school, and lateness. ECF No. 16, at 5. The District also administered several other tests and created additional plans to help L.P. with these behaviors. ECF No. 15, at 5-6. L.P. started the 2012-2013 school year in the TSP program and plaintiffs noted improvement in her behavior. ECF No. 16, at 8.

Because L.P.'s attendance was still low, however, the CSE met in the fall of 2012 to review her program, and recommended that L.P. enroll in therapeutic day programs. ECF No. 16, at 8. Plaintiffs disagreed, and believed that she should be placed in a residential program. ECF No. 16, at 8. L.P. had a panic attack while attending an interview, and the CSE changed their recommendation to attendance in a residential therapeutic school. ECF No. 16, at 8-9. In March 2013, L.P. was accepted to the Charlton School in New York ("Charlton School"),

4

a therapeutic residential program for girls. ECF No. 16, at 9. She started at Charlton School in April of 2013. ECF No. 16, at 10. L.P. became very anxious at school, believed she was being bullied, and during a visit home in May 2013, cut herself. *See* ECF No. 16, at 10-12. After this visit, L.P. refused to return to Charlton. ECF No. 16, at 12.

Charlton provided L.P. the opportunity to return until July 2013, but because L.P. refused to return, ultimately discharged her. ECF No. 16, at 12. The school did express that it would re-admit her if she wanted to return. ECF No. 16, at 12. The District continued to maintain that the Charlton School would be appropriate, but plaintiffs instead placed L.P. at the Smith School, a private day school with no therapeutic program in New York City. ECF No. 16, at 12-13. In November of 2013, plaintiffs informed the District that they would be sending L.P. to New Haven Residential Treatment Center ("New Haven") in Utah from November 2013. ECF No. 16, at 13. Her attendance continued to be poor and her performance declined in this school. ECF No. 16, at 14-15.

The CSE continued to recommend a residential therapeutic support program for L.P. for the 2014-2015 school year, and suggested to plaintiffs that they apply to state-approved residential schools in New York. ECF No. 16, at 15. Plaintiffs, however, decided to keep L.P. in New Haven. ECF No. 16, at 15. The District applied to several residential therapeutic schools in New York, as well as Wellspring, a residential therapeutic school in Connecticut, that would meet L.P.'s needs. ECF No. 16, at 15-16. Wellspring conditionally approved admission for L.P. pending an interview. ECF No. 16, at 16. In September 2014, L.P.

5

interviewed at Wellspring and was accepted soon thereafter. ECF No. 16, at 16. Plaintiffs, however, ultimately rejected Wellspring and did not transfer L.P. there. ECF No. 16, at 17. L.P. remained at New Haven until December 2014, when she was discharged because she was failing her classes. ECF No. 16, at 17.

After she was discharged from New Haven, plaintiffs enrolled L.P. in Robert Louis Stevenson School ("RLS"), a secondary school in New York City. ECF No. 16, at 17-18. L.P. started at RLS in January 2015. ECF No. 16, at 18. She repeatedly failed to attend class or got to class late, and her grades continued to suffer. ECF No. 16, at 18.

### III. Procedural History

Plaintiffs filed a due process complaint with an IHO on September 12, 2014. ECF No. 1, at 2. They filed a second due process complaint on March 19, 2015, and by motion, consolidated the two complaints. ECF No. 1, at 2. An impartial hearing was held before IHO Nancy Lederman between December 2014 and July 2015. ECF No. 1, at 2. The issues before the IHO were whether the District failed to provide L.P. with FAPE for the 2013-2014 and 2014-2015 school years, and whether the Department of Education ("DOE") was thus obligated to reimburse plaintiffs for L.P.'s tuition at New Haven and RLS. ECF No. 1, at 2; *see* ECF No. 1, Ex. B1, at 1. The IHO issued her decision on September 25, 2015. ECF No. 1, at 2; ECF No. 1, Ex. B1, at 48. The IHO found that New Haven properly provided FAPE for L.P., but that RLS did not. ECF No. 1, at 2. The IHO found, however, that plaintiffs should not be reimbursed based on "equitable considerations," and denied reimbursement for L.P.'s tuition at both New Haven

and RLS. ECF No. 1, Ex. B1, at 48. The IHO decision was mailed to the parties. ECF No. 1, at 19; ECF No. 1, Ex. A1, at 5-6; ECF No. 1, Ex. B1, at 48.

Plaintiffs petitioned for review of the IHO decision, serving both the District and the Office of State Review ("OSR") with a petition for review on November 9, 2015. ECF No. 1, at 19. On November 25, 2015, the OSR contacted plaintiffs regarding the delay in filing the petition, as it was served past the 40-day time limit imposed under state laws and regulations. ECF No. 1, at 19. According to the complaint, plaintiff's counsel stated that she "personally conferred with both the School District's attorney and personnel from the OSR regarding the timing of the IHO's decision" and that there was "unanimity of opinion as to the petition's timeliness." ECF No. 1, at 19. Plaintiff's counsel further stated that she "assumed that a statement of good cause was unnecessary" because "adjudication was not only in Plaintiff's interests, but those of the Respondent School District, as well." ECF No. 1, at 19. Plaintiffs subsequently filed a letter explaining that the attorney miscalculated the dates for serving the petition. ECF No. 1, Ex. A1, at 6.

The SRO assigned to review the case, Steven Krolak, made a decision on the petition on December 23, 2015. ECF No. 1, Ex. A1. In his decision, the SRO rejected plaintiff's explanation for the delay. ECF No. 1, at 19. The SRO found that plaintiffs did not comply with the OSR's regulations and dismissed the appeal based on untimeliness. ECF No. 1, Ex. A1, at 5-6. The SRO found that the plaintiffs did not serve the petition for review within the required 35-day time frame (40-day time frame for petitions served by mail) required by New York state

7

regulations, and dismissed the appeal *sua sponte* as untimely. ECF No. 1, Ex. A1, at 5-6. Plaintiffs then filed the complaint in the instant action on April 19, 2006, seeking to appeal the SRO's decision. ECF No. 1.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) requires that a case be dismissed when a court lacks statutory or constitutional power to adjudicate a case—*i.e.*, when it lacks subject matter jurisdiction. When a party files a motion to dismiss under Rule 12(b)(1), the nonmoving party has the burden of establishing that jurisdiction exists by preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When determining whether jurisdiction exists, the court may look to evidence outside of the pleadings. *Id.* When resolving a Rule 12(b)(1) motion, the court also accepts all material factual allegations in the complaint as true, but does not draw all inferences in plaintiff's favor. *B.C. ex rel. B.M. v. Pine Plains Cent. School Dist.*, 971 F. Supp. 2d 356, 364 (S.D.N.Y. 2013). Further, if a party seeks dismissal on both Rule 12(b)(1) and 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first, and if the court finds that there is no jurisdiction, all other issues are deemed moot. *Id.*

**DISCUSSION**

Under the IDEA, a party must exhaust all available administrative remedies prior to appealing a case to federal court. *See* 20 U.S.C. § 1415(i)(2)(A). In New York, which has the two-tiered system outlined above, exhaustion includes both an initial IHO hearing and an appeal to the SRO. *R.S. v. Bedford Cent. School Dist.*, 899 F. Supp. 2d 285, 288 (S.D.N.Y. 2012). The purpose of this

8

rule is to "channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." *Cave v. East Meadow Union Free School Distr.*, 514 F.3d 240, 245-46 (2d Cir. 2008) (quoting *Polera v. Bd. of Educ.*, 288 F.3d 478, 487 (2d Cir. 2002)); *see also Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992) ("The exhaustion doctrine prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes.").

A party's failure to exhaust administrative remedies deprives the party of the right to appeal a case in federal court because it "deprives the court of subject matter jurisdiction." *Cave*, 514 F.3d at 246. Failure to exhaust includes failure to make a timely appeal to the SRO. *B.M.*, 971 F. Supp. 2d at 365; *R.S.*, 899 F. Supp. 2d at 288-29; *T.W. v. Spencerport Cent. Sch. Dist.*, 891 F. Supp. 2d 438, 440-41 (W.D.N.Y. 2012). Further, if an SRO decision finds that a petition for review was untimely and dismisses the petition, a district court will uphold the decision unless the decision is "arbitrary and capricious." *T.W.*, 891 F. Supp. 2d at 440.

In the current case, it is undisputed that the IHO's decision was issued on September 25, 2015. ECF No. 16, at 24; ECF No. 19, at 41. Because the IHO's decision was issued on September 25, 2015, and the decision was sent to the parties by mail, the plaintiff had until November 4, 2015—40 days after the date of issuance of the IHO's opinion—to personally serve the district. *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 279.2(b) (2016). It is also undisputed that, regardless

9

of this fact, the plaintiffs did not personally serve the District until November 9, 2015. ECF No. 16, at 24; ECF No. 19, at 41. Thus, plaintiff's petition was, as an initial matter, untimely.

Further, plaintiffs failed to show good cause for untimely service. When the OSR contacted plaintiffs regarding the delay, plaintiff did not file a statement of good cause because they believed it was "unnecessary." ECF No. 1, at 19. In making his determination, the SRO considered this, as well as the plaintiff's December 2, 2015 letter to the SRO stating that the "parents' attorneys admittedly 'misinterpret[ed] the regulations' and miscalculated the dates upon which to timely serve the petition." ECF No. 1, Ex. A1, at 6. After reviewing all of this information, the SRO found that plaintiffs did not raise sufficient good cause to excuse failure of timely service. ECF No. 1, Ex. A1, at 6.

This court holds that, based on the findings of the SRO officer and the facts at hand, the SRO officer's decision to dismiss plaintiff's petition as untimely was not arbitrary and capricious. The court concludes that plaintiffs did not exhaust their administrative remedies because they failed to timely file a petition for review with the SRO. Accordingly, the court lacks subject matter jurisdiction to hear this claim and grants defendant's motion for lack of subject matter petition pursuant to Rule 12(b)(1).

## CONCLUSION

Because the court finds that it lacks subject matter jurisdiction, it grants defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). As such, all other issues are moot. This resolves the motions pending at Docket

Number 15 and 22, and the Clerk of Court is respectfully requested to close this case.

SO ORDERED

Dated: New York, New York
September 29, 2017

*Thomas P. Griesa*
Thomas P. Griesa
U.S. District Judge